640 So.2d 925 (1994)
VALLEY FORGE INSURANCE COMPANY and Continental Casualty Company
v.
Linda Sharon ALEXANDER.
1921125.
Supreme Court of Alabama.
February 25, 1994.
As Modified on Denial of Rehearing April 8, 1994.
*926 Clarence L. McDorman, Birmingham, and David M. Gische and R. Darryl Cooper of Ross, Dixon & Masback, Washington, DC, for appellants.
John A. Henig, Jr. and Gregory L. Davis of Copeland, Franco, Screws & Gill, P.C., Montgomery, and E. Farley Moody II, Birmingham, for appellee.
PER CURIAM.
This is an appeal by two liability insurance carriers who claim that each had a right to intervene and to have the trial court amend or vacate a consent order based on a settlement reached by the parties in the underlying wrongful death action.
Valley Forge Insurance Company was the liability insurance carrier for Construction One, Inc., a defendant in the underlying wrongful death action. Continental Casualty Company ("Continental") is an affiliate of Valley Forge. Continental and Valley Forge sought to intervene in order to recover over half a million dollars that they allege was fraudulently taken from them by Linda Sharon Alexander while posing as the widow of the deceased, Frank Alexander.
Frank Alexander fell to his death from a scaffolding erected at a high school construction site in Coosa County. Linda Alexander, individually and as administratrix of the estate of Frank Alexander, filed a wrongful death action in the Circuit Court of Montgomery County against a number of defendants, including Construction One, the general contractor at the high school site. The trial court denied Construction One's motion for a summary judgment, holding that the contract between the Coosa County Board of Education and Construction One created a duty "to provide for the safety of the employees of independent subcontractors on the job site such as the decedent, Frank Alexander." (C.R. 28.)
On November 2, 1990, the trial court approved a pro tanto agreement between Construction One and Linda Alexander whereby Construction One settled the case for $537,000. *927 The November 2 order found that Linda Alexander was married to Frank Alexander and concluded that Laura Alexander, Linda's daughter who was born two weeks after Frank Alexander's death, was the only child of Frank Alexander.[1] The order established a payment schedule whereby Construction One would make separate payments over a period of years to Linda Alexander and to Laura Alexander.
On April 24, 1992, John A. Henig, Jr., guardian ad litem for Laura Alexander, filed a motion to alter, amend, or vacate the November 2, 1990, order approving the settlement between Linda Alexander and Construction One, on the ground that it was based on a fraud having been perpetrated upon the trial court.[2] In the motion, the guardian ad litem alleged that Linda Alexander was never married to Frank Alexander. After a hearing on the issue, the trial court ordered, on May 20, 1992, that the monies from the November 1990 settlement agreement between Linda Alexander and Construction One be redirected to Laura Alexander. In its May 1992 order, the court found that Linda Alexander was not lawfully married to Frank Alexander at the time of his death, and that Laura Alexander was entitled to all proceeds from the November 1990 settlement "because she was the only heir of Frank Alexander at the time of his death." (C.R. 83.) The trial court designated this order an "interim order" and reserved its jurisdiction over the case for the purpose of considering such other motions as might be necessary.
On June 11, 1992, Valley Forge and Continental moved to intervene and filed in support of their intervention a motion to alter, amend, or vacate the November 1990 and May 1992 orders. The motion to alter, amend, or vacate challenged the pro tanto settlement of the wrongful death claim on two grounds. First, the insurers contended that Linda Alexander's alleged fraud upon the court in representing herself to be the widow of Frank Alexander in her wrongful death action rendered the 1990 settlement void. The insurers further contended that the trial court had no jurisdiction to determine the paternity of Linda's child, Laura Alexander, in its 1990 order approving the settlement agreement, or that it lacked jurisdiction to determine that Laura Alexander was Frank Alexander's only heir in its 1992 order modifying the earlier settlement agreement. After conducting a hearing, the trial judge denied both motions. Valley Forge and Continental appeal.
In this appeal, we address only the question whether the trial court erred in denying intervention by the insurers; Valley Forge and Continental would first have to successfully intervene in this action in order to have standing to attack the orders based on the settlement. Generally, the grant or denial of a motion to intervene is within the discretion of the trial court and will not be disturbed on appeal unless there is an abuse of discretion. Millers Mut. Ins. Ass'n v. Young, 601 So.2d 962 (Ala.1992), citing Dearmon v. Dearmon, 492 So.2d 1004, 1006 (Ala. 1986).
Rule 24, Ala.R.Civ.P., which governs intervention, states in pertinent part:
"(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest *928 relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
Timeliness is the first condition that must be met in order to intervene. NAACP v. New York, 413 U.S. 345, 365, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973).
"Because the pressure to allow intervention `of right' under Rule 24(a) is by its very nature more compelling than is [the pressure to allow] permissive intervention, most courts tend to require less rigidity in evaluation of timeliness under Rule 24(a)."
Randolph County v. Thompson, 502 So.2d 357, 364 (Ala.1987), citing Diaz v. Southern Drilling Corp., 427 F.2d 1118 (5th Cir.), cert. denied, Trefina v. United States, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), rehearing denied, Trefina, A.G. v. United States, 400 U.S. 1025, 91 S.Ct. 580, 27 L.Ed.2d 638 (1971).
Linda Alexander contends that the motion to intervene was not timely made, because it was filed over 19 months after the November 2, 1990, order approving her settlement with Construction One. However, after a hearing in which evidence indicated that Laura Alexander was not lawfully married to Frank Alexander at the time of his death, the trial court issued its interim order of May 20, 1992, which amended the November 1990 order. The court reserved jurisdiction in that May 20 order to enter further orders as necessary. Valley Forge and Continental moved to intervene on June 11, 1992, within a month of the order amending the settlement order. Thus, the motion to intervene was timely made.
There is no statute conferring on Valley Forge and Continental an unconditional right to intervene. Rule 24(a)(1). They are entitled to intervene as of right if 1) they claim an interest relating to the property or transaction that is the subject of the action; 2) the trial court's disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and 3) their interest is not adequately protected by the other parties to the settlement agreement. Rule 24(a)(2), Ala.R.Civ.P.; Randolph County v. Thompson, supra, at 363.
In order to rule on the propriety of Valley Forge and Continental's attempt at post-settlement intervention, we must view it in light of the remedy they seek to obtain through their intervention. See Lesnick v. Lesnick, 577 So.2d 856, 858 (Ala.1991). Although their request for relief was in the form of a Rule 59(e) motion to alter, amend, or vacate the 1990 and 1992 orders, the nomenclature of this motion is not controlling. Randolph County, supra, at 365 n. 2. The motion, as it is written, seeks to set aside the 1990 order as void because it was obtained by a fraud upon the court, i.e., the representation that Linda Alexander was the widow of Frank Alexander, and to set aside the 1992 order because it relied on the validity of the settlement approved by the 1990 order. Thus, we must treat this motion as a Rule 60(b) motion for relief from the 1990 and 1992 orders because of a fraud upon the court. Wilson v. Leck's 66 Service Station, supra, 513 So.2d at 621; Swain v. Terry, supra, 454 So.2d at 952.
Rule 60(b) reads in pertinent part:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a judgment, order, or proceeding for the following reasons:... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; [or] (4) the judgment is void.... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four months after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three years after the entry of the judgment ... to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."
In support of their motion to intervene, the insurers moved for relief based upon Linda Alexander's alleged fraud upon the court. Although this form of relief is usually procured *929 through an independent action, "an erroneous choice between these procedures is not fatal to the party attacking the judgment," and our courts will treat such a motion as if it were an independent action, and vice versa, where any procedural difference between them is immaterial to the case. Committee Comments, Rule 60(b), Ala.R.Civ. P.; Sams v. Equitable Life Assur. Soc'y of the United States, 402 So.2d 999, 1001 (Ala. Civ.App.1981). Therefore, whether the insurers could be considered parties so as to qualify them to file their Rule 60(b) motion depends upon whether they would have had any relief available to warrant allowing them to intervene. Lesnick v. Lesnick, supra, at 858.[3]
The trial court denied Valley Forge and Continental's motion for relief because of a fraud upon the court. The trial court has discretion to grant or deny relief under Rule 60(b), and its decision will not be reversed except for an abuse of that discretion. Id. Furthermore, a strong presumption of correctness attaches to a trial court's ruling on a Rule 60(b) motion. Wilson v. Cox, 589 So.2d 723, 725 (Ala.1991). Thus, we must determine whether the trial court abused its discretion in ruling, by denying the insurers' motions, that no relief was available to them.
Valley Forge and Continental contend that the pro tanto settlement is void because Linda Alexander was not the widow of the deceased, and was, therefore, not the proper party to bring the wrongful death action. They cite Braxton v. Dixie Elec. Co-op., Inc., 409 So.2d 822 (Ala.1982), for the proposition that only a dependent of the deceased may bring a wrongful death claim when the deceased employee is covered by the Workers' Compensation Act, Ala.Code 1975, § 25-5-11(b). Because Linda Alexander was not Frank Alexander's wife at the time of his death, they contend that she could not have brought the wrongful death action as his dependent, and, therefore, that the settlement is void and the trial court would have had no jurisdiction to approve, or later amend, the pro tanto settlement between Construction One and Linda Alexander.
However, Linda Alexander filed the wrongful death action both as Frank Alexander's dependent widow and as the duly appointed administratrix of his estate. Section 25-5-11(b) states, "In the event such injured employee has no dependents, his personal representative in the event of his death may bring a civil action [to recover damages for the wrongful death]." We have interpreted this provision as meaning that when a deceased employee is covered under the Workers' Compensation Act and has no dependents at the time of his death, then his personal representative, such as the administratrix of his estate, can properly bring a civil action to recover damages for his death. Braxton, supra, at 824. Thus, because Linda Alexander brought the wrongful death action as the administratrix of Frank Alexander's estate, then even if she was not his dependent, the trial court had jurisdiction to approve the pro tanto settlement between Construction One and Linda Alexander as the administratrix of Frank Alexander's estate. A judgment or order "cannot be void when the court has jurisdiction of the parties and the subject matter." Raine v. First Western Bank, 362 So.2d 846, 849 (Ala.1978). Thus, the insurers have no grounds for relief based on their argument that the 1990 order approving the pro tanto settlement was void, and the trial court correctly rejected this ground as a basis for their motion to intervene.
Even if the settlement is not void because of Linda Alexander's fraud upon the court, the insurers contend that the circuit court did not have the jurisdiction to determine that Linda's child, Laura Alexander, was the only child and heir of Frank Alexander. In support of this contention, they cite Ex parte Martin, 565 So.2d 1 (Ala.1989), which held that, under the facts of that case, the juvenile division or family division of the circuit court, and not the probate court, was *930 the proper forum for determining paternity under the Alabama Uniform Parentage Act ["UPA"], Ala.Code 1975, §§ 26-17-1 to 26-17-21. They also contend that Linda Alexander was still married to her former husband Timothy Pettijohn, and not to Frank Alexander, at the time of Laura Alexander's birth. Because, under § 26-17-5, a child is presumed to be the legitimate child of her natural mother's husband at the time of her birth unless this presumption of legitimacy is overcome by clear and convincing evidence, the insurers conclude that a strong presumption arises that Laura Alexander was the child of Pettijohn, and they contend that no evidence was produced to rebut this presumption.
As to their argument that paternity may be determined only by the juvenile court or the family court division of the circuit court, we note that in Alabama at least two statutes provide for a determination of the paternity of a child after the death of the alleged father. The Probate Code allows the probate court to determine paternity for the purposes of intestate succession. Ala.Code 1975, §§ 43-8-1, 43-8-48. The Alabama Uniform Parentage Act allows the juvenile or family court division of the district or circuit court to determine paternity in proceedings filed under the UPA. Ala.Code 1975, §§ 26-17-5, 26-17-10. "Ex parte Martin [565 So.2d 1 (Ala.1989)] does not hold that paternity must be established exclusively under the Uniform Parentage Act." Ex parte L.F.B., 599 So.2d 1179, 1180 n. 1 (Ala.1992). In fact, Ex parte Martin did not involve intestate succession, so § 43-8-48 could not have been used in that case to allow the probate court to establish a parent and child relationship. Ex parte Martin, 565 So.2d at 4.
The trial court's May 1992 order amending the settlement agreement determined that Laura Alexander was Frank Alexander's only heir and that Linda Alexander was not legally married to Frank Alexander at the time of his death. In finding that Laura Alexander was Frank Alexander's only heir (because she was his only child, and would, therefore, receive through intestate succession the proceeds of the pro tanto settlement establishing the damages from his wrongful death), the trial court must have applied § 43-8-48(2). Because Ex parte Martin does not require that the determination of paternity be made in the juvenile court or the family court division of the circuit court in cases dealing with intestate succession, 565 So.2d at 4; Ex parte L.F.B., 599 So.2d at 1180 n. 1, Valley Forge and Continental can not rely, as grounds to support their motion to intervene, on their allegation that the trial court had no jurisdiction under the UPA to determine Laura Alexander's paternity. Thus, the trial court did not err in rejecting this ground as a basis for their motion to intervene.[4]
We do not see how the insurers would have a direct, substantial, and legally protectable interest sufficient to allow their intervention in any proceeding to determine whether Laura Alexander was the only child and heir of Frank Alexander. They have no interest in the matter of her paternity. Because the trial court made no findings of fact to support its determination that Laura Alexander was Frank Alexander's child and heir, we must assume that it made the findings necessary to support that conclusion. Everage, supra, 372 So.2d at 831. Nothing in the record rebuts that assumption or otherwise indicates that the trial court erred in its determination of paternity. Therefore, the trial court did not err in rejecting, as a basis for intervention by Valley Forge and Continental, the proposition that Laura Alexander's paternity had been improperly decided by the trial court.
Did the insurers otherwise have such an interest relating to the property or transaction that was the subject of the plaintiff's *931 action that the trial court should have permitted them to intervene? This Court has stated the rule as follows:
"`To intervene in a proceeding under Rule 24(a)(2), the intervenor must have a direct, substantial, and legally protectable interest in the proceeding. United States v. Perry County Board of Education, 567 F.2d 277 (5th Cir.1978). There is no `clear-cut test' to determine if such an interest exists. Rather, courts should use a flexible approach, which focuses on the circumstances of each application for intervention. Perry County Board of Education, 567 F.2d at 279.'"
Randolph County, supra, at 363, quoting State ex rel. Wilson v. Wilson, 475 So.2d 194, 196 (Ala.Civ.App.1985).
The insurers maintain that they have shown a sufficient interest relating to the property or transaction that is the subject of the settlement agreement in this case because Construction One is their insured and because they are obligated to pay the $537,000 settlement under the terms of Construction One's general liability policy. They claim that they have the right to intervene in order to amend or vacate the settlement order, either because the settlement is void or because the trial court had no jurisdiction to determine paternity; and that because they have paid the settlement,[5] they have a right to recover, by way of subrogation, the money they have been called upon to pay on behalf of their insured under the policy should the settlement order be vacated.
If the 1990 settlement had indeed been void, and none of the parties had challenged it as such, then the insurers should have been able to intervene and move the court to set aside the settlement. However, the settlement was not void; Linda Alexander sued as the personal representative of the deceased, and therefore the settlement was a valid one, and the proceeds of that settlement should therefore become distributable as part of Frank Alexander's intestate estate. In order to intervene under Rule 24(a)(2), "the intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment." Waters v. Jolly, 582 So.2d 1048, 1057 (Ala.1991). Because the settlement itself is not void, the insurers' only interest is in determining who will receive payments due under that settlement.
In Randolph County v. Thompson, supra, we held that Randolph County could intervene in an action that would determine who would receive county money. 502 So.2d at 366. The insurers cite Randolph County to support their argument that they should be allowed to intervene, because, they argue, the settlement agreement determines who will receive payments made by the insurers under the terms of Construction One's general liability insurance contract with Valley Forge. However, in Randolph County, had the county not been allowed to intervene, it would not have been able to attack the judgment collaterally and would have had to pay out county money pursuant to § 36-22-62(a); this fact established a financial interest necessary to support the county's intervention. 502 So.2d at 362-64. By its intervention, the county was able to establish that it did not have to pay out any county money under § 36-22-62(a). Id. at 367. Thus, its intervention was based on an interest in the subject matter of the litigation of such a nature that it would "gain or lose by the direct legal operation of the judgment." Waters v. Jolly, supra, at 1057. However, because the settlement is not void because of Linda Alexander's fraud, Valley Forge and Continental will still have to pay under the terms of the settlement order whether or not they are allowed to intervene, and Randolph County does not apply. Because the settlement must be paid, the insurers do not have a legally protectable interest (in who receives the payments) sufficient to allow their intervention.
Finally, Valley Forge and Continental contend that they should have been allowed permissive intervention pursuant to Rule 24(b)(2), because, they argue, Linda Alexander's fraud on the court raises questions of *932 law and fact that are common to the main action (i.e., the wrongful death action) and their claim for intervention. "The purpose of Rule 24 is to anticipate future litigation, to discourage a multiplicity of lawsuits, and to relieve the intervenor from the possible prejudice of stare decisis in subsequent litigation involving the same questions of law and fact." Alabama Federal Savings & Loan Ass'n v. Howard, 534 So.2d 609, 612 (Ala.1988). The insurers' interest relates to who will receive payments under the settlement order. There are no questions of law and fact, sufficient to allow permissive intervention, that are common to this interest and to the underlying wrongful death action. For the reasons set out above, we hold that the trial court did not err in denying permissive intervention to Valley Forge and Continental.
Based upon our review of the record and the briefs filed by the parties, we conclude that the trial court did not abuse its discretion in denying the motion to intervene. The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, INGRAM and COOK, JJ., concur.
MADDOX and STEAGALL, JJ., concur in the result.
HOUSTON, J., dissents.
MADDOX, Justice (concurring in the result).
I concur in the Court's determination that the trial court did not abuse its discretion in denying intervention to Valley Forge and Continental; however, I reached my conclusion based on a different analysis.
The Court's opinion cites Lesnick v. Lesnick, 577 So.2d 856 (Ala.1991), for the proposition that we must review the propriety of Valley Forge and Continental's attempt at post-settlement intervention "in light of the remedy they seek to obtain through their intervention." 577 So.2d at 858. Based on this reading of Lesnick, this Court states that "whether the insurers could be considered parties so as to qualify them to file their Rule 60(b) motion depends upon whether they would have had any relief available to warrant allowing them to intervene." 640 So.2d at 929. In Lesnick the only issue presented on appeal was the timeliness of the motion to intervene, and this Court addressed the timeliness of the motion "in light of the remedy they sought" to obtain through their intervention. 577 So.2d at 858.
To determine whether there has been an abuse of discretion in the denial of a motion to intervene, we look to Rule 24(a), Ala. R.Civ.P., which permits a party to intervene as a matter of right upon timely application in two situations:
"(1) [w]hen a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
See State ex rel. Wilson v. Wilson, 475 So.2d 194, 196 (Ala.Civ.App.1985), cited in Randolph County v. Thompson, 502 So.2d 357, 363 (Ala.1987). See, generally, 7C Wright, Miller & Kane, Federal Practice & Procedure § 1908 (2d ed. 1986).
Accordingly, this Court must determine whether the intervenors had a direct, substantial, and legally protectable interest relating to the property or transaction that is the subject of the plaintiff's action. United States v. Perry County Board of Education, 567 F.2d 277 (5th Cir.1978). The underlying action in this case is a wrongful death action, and, based on a determination that the rights of the intervenors were not sufficiently affected to require the trial court to permit intervention on their part, I would affirm the judgment of the trial court.
HOUSTON, Justice (dissenting).
I believe that Valley Forge and Continental both had a sufficient interest under Rule 24(a)(2), A.R.Civ.P., to intervene. See Universal Underwriters Insurance Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716, 727-28 (Ala.1990) (Houston, J., *933 concurring in part and dissenting in part). Valley Forge and Continental's money has been paid into court and they are required to pay additional money into court as the result of a pro tanto settlement in a case in which the plaintiff committed a fraud upon the court.
NOTES
[1] The trial judge heard testimony but made no express findings of fact to support his conclusion that Laura Alexander was the only child of the decedent. We must assume, however, that the trial judge "found facts necessary to support his judgment, unless the finding would be clearly erroneous and against the great weight and preponderance of the evidence." Everage v. Gibson, 372 So.2d 829, 831 (Ala.1979), cert. denied, 445 U.S. 931, 100 S.Ct. 1322, 63 L.Ed.2d 765 (1980).
[2] A Rule 59(e), Ala.R.Civ.P., motion to alter, amend, or vacate must be filed not later than 30 days after the entry of the judgment. However, as long as the motion complies with the procedural requirements, a trial court "may construe a motion as it is written rather than by the designation assigned it by [the] movant." Wilson v. Leck's 66 Service Station, 513 So.2d 620, 621 (Ala.Civ.App.1987); Swain v. Terry, 454 So.2d 948, 952 (Ala.1984). Thus, we assume the trial court had jurisdiction to reopen and modify the settlement by treating the guardian's motion as a Rule 60(b) motion to set aside a judgment for fraud upon the court; this motion was filed within the three-year limit of Rule 60(b).
[3] In this appeal, we address only the propriety of the trial court's denial of Valley Forge and Continental's motion to intervene, in light of the relief they requested under Rule 60(b) should they be allowed to intervene. Because the appeal is from the order denying intervention, we do not rule on the merits of the underlying case, although we must discuss the underlying case in addressing the propriety of intervention.
[4] The parties to a paternity proceeding may agree to an adjudication of paternity by the circuit court under § 43-8-48 as long as the child is a party to the adjudication. Cotton v. Terry, 495 So.2d 1077, 1080 (Ala.1986); Reid v. Flournoy, 600 So.2d 1024 (Ala.Civ.App.1992). Ex parte Martin indicates that a child has a right to be represented in a proceeding to determine its paternity. 565 So.2d at 3. Laura Alexander was represented by a guardian ad litem at the hearings leading up to the November 1990 and May 1992 orders indicating that she was Frank Alexander's child.
[5] The only reference in the record to satisfaction of the settlement is a reference to the payment of $50,000 into the Court by Continental on December 18, 1990. (C.R. 131.)